IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

RANDY M. YOST,

       Plaintiff,

V.                                 CIVIL ACTION NO. 3:07-0092

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

**<u>FINDINGS AND RECOMMENDATION</u>**

       In this action, filed under the provisions of 42 U.S.C. §§405(g) and 1383(c)(3), plaintiff seeks review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income based on disability. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

       Plaintiff protectively filed his applications on September 13, 2004, alleging disability commencing January 1, 2003,[1]  as a consequence of being HIV positive with AIDS, thrush, depression, memory loss, symptomatic CD 4 count 27, viral load 100,000 plus, abdominal pain, diarrhea, anxiety, mood swings and an inability to concentrate.   On appeal from initial and reconsidered denials, an administrative law judge, after hearing, found plaintiff not disabled in a

---

[1]  Plaintiff's insured status expired March 31, 2005, and, for purposes of his disability insurance benefits application, it was incumbent upon him to establish disability on or before that date.  <u>Harrah</u> v. <u>Richardson</u>, 446 F.2d 1, 2 (4th Cir. 1971).

decision which became the final decision of the Commissioner when the Appeals Council denied a request for review.  Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

At the time of the administrative decision, plaintiff was forty-nine years of age and had obtained a GED.  His past relevant employment experience consisted of work as the CEO/founder of a network integration business, installer with a garage door company, and weapons instructor for the United States Navy.  In his decision, the administrative law judge determined that plaintiff suffers from "symptomatic human immunodeficiency virus (HIV), " an impairment which he considered severe.  Concluding that plaintiff had the residual functional capacity for a limited range of light level work and that his past work as the CEO/founder of a network integration business was not precluded by these limitations,  the administrative law judge found plaintiff not disabled.

From a review of the record, it is apparent that the Commissioner's decision is supported by substantial evidence.  At the hearing, plaintiff alleged his disability is due to a lack of energy related to being HIV positive and to diarrhea which occurs at unexpected times.  After being diagnosed with HIV in 1993, plaintiff began treatment in 1995 and continued it through 2001 when he stopped due to the expense.   He did not resume treatment until 2004 and had become symptomatic by that time.[2]

Medical reports reflect plaintiff came to the Ryan White Clinic at CAMC in Charleston on April 13, 2004, seeking to become established as a patient so he could resume

---

[2]  Although plaintiff chose January 1, 2003 as his onset date, there are no medical reports from that time.  The earliest report is from March 2004.

2

treatment for HIV.  Though he related having chronic pain in his hip, he also indicated he had no

problem with mobility nor with performing his activities of daily living.  Exam revealed oral thrush[3]

and some type of dermatitis.  Just a few days after this initial exam, plaintiff was seen for mental

evaluation with complaints of decreased energy, fluctuating sleep levels and diminished interest,

concentration and memory.

On May 13, 2004, plaintiff's HIV medications were resumed and he also reported

taking Zoloft for anxiety but indicated it caused him to have diarrhea.  He also reported having

fatigue and chest congestion.  The diagnosis on this date was HIV/AIDS, hepatitis C, depression,

diarrhea secondary to Zoloft, versus other causes, and oral/esophageal thrush.

On June 7, 2004, plaintiff reported that some creative thought was starting to come

back to him.  He also related he had "a lot to keep [him] busy" as he was emptying out his antique

shop and working on taxes.  He had better focus, was motivated and felt things "coming back" to

him.  He was observed to be more social with improved mood and broader affect.  At a July 26,

2004 mental health appointment, Dr. Veena Bhanot observed plaintiff's mood to be "cautiously

optimistic," and his affect broad and appropriate.  Plaintiff's recent and remote memory were

considered intact and he was able to perform simple computation and concentration tests without

difficulty.  Dr. Bhanot diagnosed major depressive disorder, recurrent, but assessed plaintiff's

Global Assessment of Functioning at between fifty and sixty, in the moderate symptom range,[4]

---

[3] Thrush is a disease of the mouth caused by a fungus infection and characterized by the formation of whitish spots in the mouth.  Attorney's Dictionary of Medicine T-118 (2007).

[4] See, Diagnostic and Statistical Manual of Mental Disorders, 4th Ed., American Psychiatric Association, 1994 at 32.

which, as the administrative law judge found, does not seem consistent with this examiner's observations.

At a follow-up visit on July 29, 2004, plaintiff reported problems with chronic low back pain. The following month he related that one of the medications prescribed was helping with sleep; his energy level had stabilized, though endurance was still decreased; and, he was still having diarrhea, which he said had been present since starting back on the HIV medication. The examining physician noted plaintiff was anxious and had a dysphoric mood but this was due to recent changes in his life. This physician was presumably referring to plaintiff's living situation as he had recently become homeless because of a disagreement between his roommate and their landlord.

At a September 20, 2004 mental health appointment, plaintiff related he had gotten a housing grant but was concerned about what to do with his life. He felt he was unable to take a new job because he feared loss of medical coverage. He did report, however, that he was going back to school and related that, if nothing else, he could do consulting work with his computer. Sleep was better and his mood, though down, was described as "greatly improved" since beginning treatment. Energy and endurance were considered unchanged. While plaintiff's mood was also noted to be anxious, it was felt to be related to concerns over planning his future. The diagnosis was major depressive disorder secondary to medical condition. Blood test results reported September 22, 2004, were interpreted as consistent with lymphopenia[5] "with markedly decreased numbers of helping/inducer CD 4+ T-cells consistent with markedly decreased cell mediated immunity."

---

[5] A condition of the blood marked by a decrease in the number of lymphocytes, which are a variety of white blood cells formed in the lymph nodes, spleen, tonsils, thymus and other types of lymph tissue. They are essentially body defense cells, especially against infection or bacterial invasion, but they have other functions as well. Attorney's Dictionary of Medicine, supra at L-233, L-222 (2007).

4

The Commissioner sent plaintiff to Lisa Tate, M.A., for a consultative psychological evaluation on December 15, 2004.  Despite plaintiff's allegations of depressed mood, diminished concentration and interest in activities, mental status examination revealed an euthymic mood, broad and reactive affect and normal judgment, memory and concentration.  Among the daily activities plaintiff listed were reading and walking his dog, doing whatever needed to be done around the house, coming to town and visiting people and reading or painting at times.  Ms. Tate diagnosed major depressive disorder, single episode, moderate, and assessed plaintiff's social functioning, concentration, persistence and pace as within normal limits.

Stephen Nutter, M.D., performed a physical consultative evaluation for the Commissioner on March 15, 2005.  Plaintiff's main complaint was lack of endurance to sustain any physical activity.  He said he could perform housework alright but had to rest when mowing grass.  He also reported intermittent back pain and constant hip pain.  On exam, right shoulder pain and crepitus in both shoulders were observed as well as right knee pain, mild tenderness in the lumbosacral area with reduced range of motion and pain and tenderness in the right hip.  Nonetheless, plaintiff was able to walk on his heels and toes, perform tandem gait and squat without difficulty.  Pulmonary exam revealed clear lungs but coarse breath sounds.  A chest X-ray was considered consistent with "slight" COPD, but pulmonary function testing was within normal limits.  Dr. Nutter was of the impression that plaintiff had HIV, shortness of breath with a history of asthma, chronic lumbosacral strain without evidence of radiculopathy and probable degenerative arthritis in the right hip.

A March 24, 2005 visit to the CAMC clinic for follow-up of both physical and mental conditions reflected complaints of fatigue, low energy, depression, decreased sleep and

attention/concentration when reading, occasional diarrhea, migraine headaches, episodic low back pain and right hip pain.  Mental status exam revealed plaintiff's speech was articulate, his thoughts were  well organized and his mood was mildly sad.  The diagnosis was fatigue and decreased attention caused by benadryl, and major depressive disorder, moderate, without psychotic features. Blood work on this date was again interpreted as consistent with lymphopenia but this time with moderately decreased numbers of helper/inducer CD 4+ T-cells consistent with a reduced cell mediated immunity.

The most recent evidence before the administrative law judge were reports from October 27, 2005.  The lab work reflected continued improvement and was consistent with only mild suppression of cell mediated immunity.  The note relative to physical and mental condition reflects plaintiff's report that he had decreased energy and motivation and he had discontinued Zoloft and Neurontin because he felt they were causing his diarrhea.  In fact, plaintiff related that his GI problems at that time were "now manageable."  He also related that he was working in his parents' antique store and traveling some to various estate sales and was also organizing some of these sales. He indicated that winter was a slow time in the antique business and he planned to close the store soon.  Socially, he reported spending time with friends and felt that his mood was okay.

State agency reviewing physicians and psychologists were the only sources to comment about plaintiff's mental and physical residual functional capacity.  Three psychologists were of the opinion that plaintiff's mental impairments were "not severe," i.e., did not "significantly" limit plaintiff's mental ability to do basic work activities such as understanding, carrying out and remembering simple instructions; using judgment; responding appropriately to

supervisors, co-workers and usual work situations; and, dealing with changes in a routine work setting.  20 C.F.R. §§404.1520(c), 404.1522, 416.920(c), 416.922.

The physicians reviewing the evidence relative to plaintiff's physical condition determined that he could perform medium level work but would need to avoid concentrated exposure to extreme cold, extreme heat and to hazards.

The administrative law judge, after considering all of the evidence before him, found as the only "severe" impairment plaintiff's HIV status.  He concurred with the state agency reviewers that plaintiff's anxiety and depression were not of such severity that his abilities to do work-related activities were "significantly" limited.  Despite diagnoses of major depressive disorder, the medical reports consistently reflected no objective observations of impairment in memory or concentration.  Medication improved plaintiff's mood, and reports reflect that he had no more than mild impairment of activities of daily living or social functioning.  The Court concludes that the administrative law judge's findings on this issue are well-supported by the evidence.

In determining whether plaintiff's HIV met or equaled a listing, the administrative law judge focused on Section 14.08 of the listings[6] which addresses this impairment.  He concluded that the evidence did not show that plaintiff was afflicted with, inter alia, opportunistic infections, skin eruptions or lesions, neurological or hematological abnormalities, or diarrhea requiring IV hydration.  He thus found that plaintiff's HIV did not meet or equal any listing.  Plaintiff objects to this finding and asserts that he has many conditions which meet portions of the listing section under 14.08.  The main areas he points out are candidiasis of the esophagus related to 14.08B, significant involuntary weight loss and diarrhea related to 14.08I and 14.08N.

---

[6]  20 C.F.R. Part 404, Subpart P, Appendix 1, Section 14.08.

The medical reports do reflect a diagnosis of esophageal candidiasis (thrush), a condition which meets listing 14.08B(2).  In addition to the diagnosis, however, the duration requirement must also be met, i.e., the condition must have lasted or be expected to last for a continuous period of twelve months.  20 C.F.R. §§404.1525(c)(4), 416.925(c)(4).  Records reflect a diagnosis of thrush with esophageal involvement on May 13, 2004, for which medication was prescribed, and there appears to be no diagnosis of it again.  Clearly, this condition does not meet the severity required by Section 14.08B(2).

With regard to plaintiff's weight loss, as the Commissioner points out, his weight as recorded in the reports in the record has not varied significantly.  Although plaintiff has consistently alleged he lost a significant amount of weight at an earlier time, it was evidently prior to the filing of his applications and his alleged onset date and is not confirmed in the medical evidence.  Further, there has been no diagnosis of HIV wasting syndrome as specified in 14.08I.  Without this preliminary portion of the listing being met, even if plaintiff had shown his diarrhea was chronic "with 2 or more loose stools daily lasting for 1 month or longer," he could not meet this listing.  Further, 14.08J, also addressing diarrhea, requires that it have lasted at least one month, be resistant to treatment and have required intravenous hydration, intravenous alimentation or tube feeding.  Clearly, plaintiff's diarrhea does not meet these requirements either.  Moreover, it is not clear that this problem was related to HIV, as plaintiff asserted repeatedly that it was due to the medication Zoloft and, as noted, after he discontinued the Zoloft and Neurontin he reported that diarrhea was "now manageable."

Finally, plaintiff also alleges that  he meets 14.08N which requires that a claimant have one of a number of previously-mentioned conditions, including diarrhea, which by itself would

8

not be severe enough to meet the other listings but which results in a marked degree of restriction of either activities of daily living, social functioning or ability to complete tasks in a timely manner due to deficiencies in concentration, persistence or pace.  Plaintiff, however, was not shown to have a marked degree of restriction in any of these areas.  While the administrative law judge's analysis of this issue could have been more detailed, his lapse is not significant enough to require remand as it is apparent that plaintiff's condition did not meet or equal any listing and thus his findings are supported by substantial evidence.

In terms of residual functional capacity, the administrative law judge determined plaintiff was limited to the light exertional level rather than medium as found by the state agency medical advisors.  He did adopt their findings  that plaintiff should avoid concentrated exposure to extreme cold and heat and to hazards, which includes heights and machinery.  He also found that plaintiff would require two to three breaks at unpredictable times during a workday to allow for episodes of diarrhea.  These limitations take account of the improvement in plaintiff's condition experienced shortly after starting back on medication for HIV, and the normal exam findings in the medical reports combined with the effectiveness of medication in controlling or eliminating some of plaintiff's problems provide ample support for  the administrative law judge's findings.

While plaintiff submitted additional evidence to the Appeals Council with his request for review, the Council concluded that this evidence would not change the administrative law judge's decision. An examination of this evidence reveals that some of the documents are duplicates of those in the record before the administrative law judge.  The others are four clinic reports from April and June of 2006 and reflect that plaintiff was treated for a skin rash which significantly improved by the end of April and some mention of a problem with "floaters" in his eyes in June.

Noticeably absent from these reports was any report of diarrhea.  Given that these do not reflect new problems of any significance or any worsening of plaintiff's existing condition, the Court concludes that the Appeals Council finding has substantial support.

While plaintiff complained of fatigue, weakness, inability to remember or concentrate, diarrhea, musculoskeletal pain and anxiety and depression which prevent him from being able to work, the administrative law judge, taking account of the evidence as well as his observations of plaintiff at the hearing, concluded that his assertions were lacking in credibility.  He found persuasive plaintiff's daily activities which included taking care of his house, walking his dog, going to yard sales with his mother, working in the antique store and traveling to estate sales.  Also, the medical evidence contains few or no findings to support his complaints of pain and indicates his HIV symptoms are controlled with medication.  In view of the evidence, and taking account of the administrative law judge's "opportunity to observe the demeanor and to determine the credibility of the claimant," these findings are entitled to "great weight."  Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).  A  vocational expert present at the hearing testified plaintiff's past work as a CEO was sedentary and skilled.  Given the residual functional capacity found by the administrative law judge, this witness was of the opinion that this type of work could still be performed.  Thus, the administrative law judge, after considering plaintiff's residual functional capacity in light of the requirements of his past work as CEO of an Internet company, determined that plaintiff was still capable of performing this work.  Substantial evidence supports this finding.

Resolution of conflicts in the evidence is within the province of the Commissioner, not the courts, Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964), and if the Commissioner's findings are supported by substantial evidence this Court is bound to uphold the decision.  Blalock

v. <u>Richardson</u>, 483 F.2d 773, 775 (4th Cir. 1972).  In the present case, the evidence, though somewhat conflicting, provides substantial support for the Commissioner's findings with respect to plaintiff's impairments, residual functional capacity and ability to perform past work.  Under such circumstances, the decision of the Commissioner should be affirmed.


<u>**RECOMMENDATION**</u>


In light of the foregoing, it is **RESPECTFULLY RECOMMENDED** that plaintiff's motion for judgment on the pleadings be denied, that the like motion of defendant  be granted and the decision of the Commissioner affirmed.

Plaintiff and defendant are hereby notified that a copy of these Findings and Recommendation will be submitted to the Honorable Robert C. Chambers, United States District Judge, and that, in accordance with the provisions of Rule 72(b), Fed.R.Civ.P., the parties  may, within thirteen days of the date of filing these Findings and Recommendation, serve and file written objections with the Clerk of  this Court, identifying the portions of the Findings and Recommendation to which objection is made and the basis for such objection.  The judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made in accordance with the provisions of 28 U.S.C. §636(b) and the parties are advised that failure to file timely objections will result in a waiver of their right to appeal from a judgment of the district court based on such Findings and Recommendation.  Copies of objections shall be served on all parties with copies of the same to Judge Chambers and this   Magistrate Judge.

11

The Clerk is directed to file these Findings and Recommendation and to mail a copy of the same to all counsel of record.


DATED:  March 4, 2008


MAURICE  G.  TAYLOR,  JR.
UNITED  STATES  MAGISTRATE  JUDGE